**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Scott Goldberg, | No. CV-24-01376-PHX-JAT |
| Appellant, | **ORDER** |
| v. | |
| Gallagher & Kennedy PA, et al., | |
| Appellees. | |

Appellant Scott Goldberg appeals two orders from the U.S. Bankruptcy Court for the District of Arizona ("Bankruptcy Court"), one dated November 21, 2023, (Doc. 1 at 5–8), and the other dated April 29, 2024, (Doc. 1 at 9–11). Pending before the Court is Goldberg's Opening Brief, (Doc. 13), Gallagher & Kennedy's ("G&K") Response, (Doc. 16), and Goldberg's Reply, (Doc. 20).

To quote the Bankruptcy Court, this case presents "a colossal mess." (Doc. 13-17 at 68). The colossal mess is worsened by the fact that neither party presented a cohesive series of events that the Court could follow, nor a consistent or comprehensive set of arguments. Nevertheless, the Court now rules.

## I.    BACKGROUND

### a.  Schian Walker Dissolution

Schian Walker ("SW") was a law firm specializing in bankruptcy matters. (Doc. 13

at 11). SW had three members: Cody Jess,[1] Scott Goldberg,[2] and Dale Schian. (*Id.*). SW discontinued operations in July 2019. (*Id.*). At that time, SW was employed in two relevant, ongoing cases: (1) the "Potential Dynamix" case;[3] and (2) the "Swift Air" case.[4] (*Id.*). The Swift Air case had gone to trial a few months prior to the SW dissolution, and while no ruling had been entered, a multi-million-dollar contingency fee payout was expected. (*Id.*). The Potential Dynamix case was still midstream and had a more "uncertain" outcome.[5] (*Id.*). It also had the additional wrinkle of a testifying expert who was owed $87,129 in unpaid fees; the parties refer to this as the "Morones Engagement." (Doc. 13-2 at 9).

Between July and September of 2019, Goldberg and Jess joined Moyes Sellers & Hendricks and Schian joined G&K. (*Id.* at 11–12). Now fully defunct, SW could not continue representation in the aforementioned pending cases.

### b. 2020

On January 16, 2020, Schian (on behalf of SW) and Michael Kennedy (on behalf of G&K) entered an "**Agreement of Counsel**" in which G&K agreed to perform the obligations of SW in the Potential Dynamix case, the Swift Air case, and the Morones Engagement (collectively, "the Agreements"). (Doc. 13-2 at 8–9). Notably, this Agreement

---

[1] Jess and Goldberg litigated together, at least in the beginning of these proceedings. (*See, e.g.,* Doc. 13-12). The Court understands that Jess has since settled with Schian personally (though not with G&K). (Doc. 17 at 103 n. 10). Regardless, this appeal, as well as the most recent filings in the bankruptcy case, "have been on behalf of Goldberg only or filed by Goldberg personally." (*Id.*). Accordingly, the Court will focus this Order on Goldberg and will largely omit Jess' name.

[2] While Goldberg represents himself on appeal, he was represented by counsel at times. For ease of reading, the Court will simply use "Goldberg" to refer to actions taken by Goldberg or Goldberg's counsel.

[3] As used in this Order, the "Potential Dynamix" case technically refers to the adversary proceeding (2:13-AP-00799-DPC) brought by Timothy H. Shaffer, Trustee of Potential Dynamix, against Amazon. In briefing, the parties sometimes refer to this adversary proceeding as "the Amazon case." The Amazon adversary proceeding is one of multiple adversary proceedings in the Potential Dynamix bankruptcy case (2:11-BK-28944-DPC).

[4] Similarly, as used in this Order, the "Swift Air" case technically refers to the adversary proceeding (2:14-AP-00534-DPC) brought by MorrisAnderson & Associates, Trustee of Swift Air, against RedEye II. This adversary proceeding is one of multiple adversary proceedings in the Swift Air bankruptcy case (2:12-BK-14362-DPC).

[5] In June 2019, SW agreed "to forgo the hourly fees [SW was] entitled to and convert that portion of the representation to a contingent fee equal to 40% of the gross amount of any recovery, . . . giving credit for fees previously paid in the amount of $145,605.35." (Doc. 17 at 7).

of Counsel contained a "**Cross-Collateral Provision**"[6] that allowed G&K to be paid fees and reimbursed costs for each obligation "from [] amounts otherwise payable to SW under the Agreements." (Doc. 13-2 at 8). However, the Employment Application clarified that "[t]he engagement of [G&K] [would] ***not*** result in any additional funds paid from [the Potential Dynamix] estate." (Doc. 13-2 at 3) (emphasis in original). Thus, G&K was entitled to receive a contingent fee equal to 40% of the gross amount of any recovery from the Potential Dynamix bankruptcy estate and, for fees above and beyond that amount, G&K could be paid "from amounts otherwise payable to SW."

**The practical effect of the Cross-Collateral Provision, and the crux of this appeal, was that G&K would go on to incur $1.6 million in fees in the Potential Dynamix case, receive an adverse outcome in that case, and seek payment of its fees from "amounts otherwise payable to SW." The majority, if not the entirety, of "amounts otherwise payable to SW" was the proceeds of the Swift Air case.** In subsequent filings, Goldberg argues that it was not apparent from the plain text of the Agreement of Counsel that this sort of "cross-collateralization" would either be sought or permitted. (*See, e.g.,* Doc. 13-12 at 3, 8; Doc. 13-17 at 113–115).

On January 30, 2020, Timothy Shaffer, Chapter 11 trustee for Potential Dynamix, filed an "Application to Employ [G&K] as Special Counsel" (the "**Employment Application**") with the Bankruptcy Court. (Doc. 13-2). Importantly, the Employment Application included the aforementioned Agreement of Counsel, including the Cross-Collateral Provision, as an exhibit. (Doc. 13-2 at 8–9). The Employment Application also specified that the engagement of G&K as special counsel would not result in any additional funds paid from the Potential Dynamix estate. (Doc. 13-2 at 3). The parties agree that this means G&K could not receive more than 40 percent of any recovery plus reasonable costs from the Potential Dynamix estate. (*See, e.g.*, Doc. 13-17 at 135).

The Bankruptcy Court approved the Employment Application on the same day, on

---

[6] This Court, like the Bankruptcy Court and Goldberg, is using the term "cross-collateral" in its general, widely-understood sense. The Court is not using the term as defined in the Local Rules of Bankruptcy Practice.

an ex parte basis. (Doc. 13-4 (the "**Employment Order**")). In the Employment Order, the Bankruptcy Court ordered that "all compensation to be paid or payable pursuant to the Application shall be subject to Court approval upon due and proper notice to creditors, the United States Trustee, and to interested parties." (Doc. 13-4 at 2).

On February 5, 2020, in an email thread, Goldberg referenced a "proposed objection to G&K's employment." (Doc. 13-5 at 11). Later in the same thread, Jeff Sellers, a member of Goldberg's new law firm, communicated concerns regarding Schian's authority to enter the Agreement of Counsel to Dean Short at G&K. (Doc. 13-5 at 7–11).

Concerned about how the assets of SW were being distributed, on February 7, 2020, "Jess and Goldberg filed an application for the appointment of the Receiver in the receivership action pending in the Maricopa County Superior Court . . . alleg[ing], among other things, that (i) Schian caused SW to enter into contracts and agreements without Jess and Goldberg's knowledge and consent, and (ii) Schian filed documents in [the Bankruptcy Court] misrepresenting his authority to act on behalf of SW." (Doc. 13-12 at 6; Doc. 13-12 at 24–33 (the application)).

On April 16, 2020, the Bankruptcy Court entered its final judgment in the Swift Air case. (2:14-AP-00534-DPC Docs. 562, 563). As of June 2021, the Litigation Trustee had collected $9.6 million total recovery. (Doc. 13-16 at 10).

On May 4, 2020, the Maricopa County Superior Court[7] entered an amended order, appointing a Receiver for the former firm's "estate" and setting the terms of the receivership estate. (Doc. 13-12 at 37–47).

On July 2, 2020, Goldberg filed a "Statement of Position and Reservation of Rights" with the Bankruptcy Court. (Doc. 13-5). There, Goldberg explained that he was challenging in State Court whether Schian had authority to enter the Agreement of Counsel. (Doc. 13-5 at 3). If the State Court found Schian lacked authority, Goldberg would "likely seek to modify or vacate the [Employment] Order." (*Id.*). Goldberg did not, however, request relief at this time. (*Id.*).

---

[7] Case Numbers CV2020-001402; CV2020-001871 (consolidated).

### c.  2021

In February 2021, the Potential Dynamix case went to trial and on September 30, 2021, the Bankruptcy Court issued a tentative order largely ruling against G&K. (2:13-AP-00799-DPC Doc. 390).

Goldberg claims that October 2021 was when he first "became aware that [G&K] and Schian intended to take the Swift Receivable for themselves at his expense." (Doc. 13 at 15). Goldberg says that after the Bankruptcy Court issued its tentative decision, the Swift Receivable was "elevat[ed] in importance" to G&K and Schian, which then "forced them to divulge the Cross Collateral Provision." (Doc. 13 at 15).

On December 20, 2021, Goldberg filed a Motion for Bankruptcy Rule 2004 Examination. (Doc. 13-6). In the Motion, Goldberg attacked the Cross-Collateral Provision and asked the Bankruptcy Court to enter an order directing (1) G&K to produce certain documents, (2) G&K to designate a witness for examination, and (3) Schian to appear for an examination. (Doc. 13-6 at 2).

### d.  2022

On January 6, 2022, the Bankruptcy Court held a hearing regarding Goldberg's Motion for Bankruptcy Rule 2004 Examination. (Doc. 13-9 (transcript)). In the hearing, the Bankruptcy Judge made clear that he did not think the Cross-Collateral Provision issue was ripe until the Potential Dynamix case concluded. (Doc. 13-9 at 31–33; 39–40). Consequently, he denied Goldberg's Motion. (*Id.*).

On August 11, 2022, the Bankruptcy Court adopted its tentative decision in the Potential Dynamix Case as its final ruling. (2:13-AP-00799-DPC Docs. 404, 405).

On September 15, 2022, G&K filed its "First Interim[8] Application for Compensation and Reimbursement of Fees," ("Fee Application") seeking $1,603,367.00 in fees and $297,392.54 in costs. (Doc. 13-11 (footnote added)). Of the total costs sought, "$87,129 [was] attributable to the costs incurred by SW under the Morones Engagement." (Doc. 13-11 at 13).

---

[8] The Interim Fee Application was subsequently amended on October 21, 2022. (Doc. 13-14).

### i. Goldberg's Objections

On October 14, 2022, Goldberg filed a "preliminary objection" to the Fee Application. (Doc. 13-13). Goldberg asked the Bankruptcy Court "to defer or abstain from consideration of the [Fee] Application until the Receiver's claim adjudication procedures are concluded in the State Court." (Doc. 13-13 at 9).

Simultaneously,[9] Goldberg filed a 40+ page "limited objection" to the extent that G&K's employment "relies on the Agreement of Counsel or implicates the Swift Proceeds." (Doc. 12-13 at 2–3). Goldberg argued that the Agreement of Counsel "was never fully or adequately disclosed to the Court"[10] and that the Court's ex parte approval of the Agreement was "insufficient under the circumstances." (Doc. 13-12 at 2–3). Goldberg asked the Bankruptcy Court to vacate its Employment Order that approved the Employment Application. (*Id.*).

Goldberg subsequently made clear that he "never objected to [G&K's] costs" in the Potential Dynamix matter. (Doc. 13-17 at 83, 84, 117). Similarly, Goldberg clarified that he did not object to "a 40 percent contingency fee in [the Potential Dynamix] case." (Doc. 13-17 at 88, 107, 117, 122). Although G&K argues that its employment "has always been on an hourly basis," it agrees that the Agreement of Counsel restricts its recovery from the Potential Dynamix estate to no more than 40 percent of the total recovery plus reasonable costs. (Doc. 13-17 at 134, 136).

### e. 2023

On January 27, 2023 the Maricopa County Superior Court Judge approved the terms of a Settlement Agreement between the Receiver and G&K in an unsigned minute entry.[11] (Doc. 17 at 91). Under the Settlement Agreement, (Doc. 13-14 at 6–12). G&K and SW "resolved the disputes between them." (Doc. 13-14 at 3). As described by G&K:

> G&K agreed to limit its claim in the SW Receivership to $1.1 Million and to pursue approval of the [Employment] Application before [the Bankruptcy Court]. The

---

[9] Collectively, the October 14, 2022 filings will be referred to as the "**Objections**."
[10] Goldberg argues that while the Agreement of Counsel was attached to the Employment Application, it was nonetheless "not described or adequately disclosed in the text of the Employment Application." (Doc. 13-12 at 2).
[11] Case Number CV2020-001402.

Receiver agreed to pay $650,000.00 of the G&K claim, subject to reimbursement if G&K recovers more than $450,000.00 by reason of the Application.

(*Id.*).

The Court understands that there was additional litigation in State Court regarding whether the Settlement Agreement was final or binding, but the Court does not know whether that litigation concluded and, if so, what the outcome was. (*See* Doc. 13-17 at 120). Regardless, it appears that G&K received the $650,000 and no longer holds the funds in trust. (Doc. 16 at 14).

On August 30, 2023, the Bankruptcy Court found that Goldberg had standing to object to (1) G&K's Fee Application and (2) G&K's Employment Application. (Doc. 17 at 101).

On October 3, 2023, the Bankruptcy Court held a hearing to address the matters raised by Goldberg in his Objections. (Doc. 13-17 (transcript)). The substance of this hearing is discussed more below.

On November 21, 2023, the Bankruptcy Court entered an Order that partially approved G&K's amended Fee Application. (Doc. 13-19). The Bankruptcy Court noted that "[n]othing in this order or in the Employment Order precludes G&K from accepting and applying any payment that it has received from SW." (Doc. 13-19 at 5). This Order is, in part, the subject of this appeal.

### f. 2024

On April 29, 2024, the Bankruptcy Court entered an Order that approved a stipulation between Timothy Shaffer, G&K, Goldberg, and the Receiver, for the allowance and payment of administrative professional claims. (Doc. 13-20). This Order is, in part, the subject of this appeal.

On August 20, 2024, Goldberg filed this appeal. (Doc. 13).

### g. Substance of Appeal

At bottom, G&K billed $1,603,367.00 in fees and $297,392.54 in costs in the Potential Dynamix case. (Doc. 13-11 at 2). G&K believes it "is entitled to be paid from

1    two pots" for those fees and costs. (Doc. 13-17 at 135).

2          The first pot is the SW receivership estate, which mainly consisted of the Swift Air

3    recovery. Under the Settlement Agreement, G&K received $650,000 from this pot, with

4    the express condition that the initial payment of $650,000 plus whatever amount G&K

5    recovered in the Potential Dynamix bankruptcy estate could not exceed $1.1 million. (Doc.

6    13-14 at 8). Ultimately, via a stipulation, the Bankruptcy Court approved $450,000 total

7    from the Potential Dynamix bankruptcy estate (the second pot).[12] (Doc. 13-20 at 3).

8          On appeal, Goldberg attacks the Bankruptcy Court's November 21, 2023 and April

9    29, 2024 Orders on three separate grounds. First, Goldberg argues that the Bankruptcy

10   Court erred as a matter of law when it denied his Objections as untimely. (Doc. 13 at 17–

11   19). Second, Goldberg argues that the Bankruptcy Court erred as a matter of law when it

12   failed to consider the merits of his Objections. (*Id.* at 20–21). Third, Goldberg argues that

13   the Bankruptcy Court erred in finding that it was not required to approve the bankruptcy

14   fees paid or payable to G&K. (*Id.* at 21–23).

15   **II.    LEGAL STANDARD**

16         A bankruptcy court's findings of fact are reviewed for clear error, while its

17   conclusions of law are subject to de novo review. *In re JTS Corp.*, 617 F.3d 1102, 1109

18   (9th Cir. 2010). The bankruptcy court commits clear error where "the reviewing court is

19   left with the 'definite and firm conviction that a mistake has been made.' " *In re Adamson

20   Apparel, Inc.*, 785 F.3d 1285, 1291 (9th Cir. 2015) (citation omitted) (concluding that

21   bankruptcy court did not clearly err in making a finding of fact because that finding was

22   supported by evidence in the record). "Mixed questions of law and fact are reviewed de

23   novo." *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

24   **III.   DISCUSSION**

25         **a.  Deficient Opening Brief**

26         G&K devotes three pages of its Response to explaining why Goldberg's Opening

27   ─────────────────────────

28   [12] The Potential Dynamix judgment was approximately $1 million. (2:13-AP-00799-DPC
     Doc. 404). Under the Agreement of Counsel, G&K was entitled to a contingent fee equal
     to 40% of the gross amount plus reasonable costs. Thus, the stipulation amount of $450,000
     makes sense.

Brief is deficient under the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy, and the Federal Rules of Appellate Procedure. (Doc. 16 at 14–17). As G&K correctly states, this Court has discretion in enforcing its rules. Under such discretion, the Court finds G&K's arguments wholly unpersuasive.

### b. Standing

Goldberg's Opening Brief, (Doc. 13), does not directly address the issue of whether Goldberg has standing. However, G&K attacks Goldberg's standing in its Response, (Doc. 16 at 12–14), and Goldberg addresses the issue in his Reply, (Doc. 20 at 10–11). Because standing is a component of the Court's jurisdiction, it is a threshold issue that must be addressed first. *See Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023) ("The question of whether a party has standing is a threshold issue that must be addressed before turning to the merits of a case.").

### i. Legal Standard

Historically, "[t]o appeal a bankruptcy court's order, a party must establish Article III standing and that it is 'aggrieved' by the order." *Matter of E. Coast Foods, Inc.*, 80 F.4th at 905. However, the Ninth Circuit Court of Appeals recently "returned emphasis" to Article III standing, finding it "unclear" why the "person aggrieved rule" continues to be applied "in the absence of the statute providing the basis for doing so." *Id.* at 906.

To establish Article III standing, a party "must therefore show that it has: (1) suffered an 'injury in fact' that is concrete, particularized, and actual or imminent, (2) the injury is 'fairly traceable' to the defendant's conduct, and (3) the injury can be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Article III standing is jurisdictional and can neither be waived by the parties nor ignored by the court." *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011).

To establish that it is "aggrieved" by a bankruptcy court order, a party must show that the order (1) "diminish[es] the appellant's property," (2) "increase[s] its burdens," or (3) "detrimentally affects its rights." *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999).

The "aggrieved person" standard is a prudential standard, or a "judicially self-imposed limit[] on the exercise of federal jurisdiction." *City of L.A. v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Unlike Article III standing, prudential standing can be waived. *Id.*; *see also Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000).

Some of G&K's arguments go to the issue of equitable mootness, a doctrine under which a court may elect not to reach the merits of a bankruptcy appeal if doing so would require the unwinding of complex or difficult transactions. *In re Transwest Resort Props., Inc.*, 801 F.3d 1161, 1167 (9th Cir. 2015) (citing *Rev Op Grp. v. ML Manager LLC* (*In re Mortgs. Ltd.*), 771 F.3d 1211, 1215 n. 2 (9th Cir. 2014)). The "most important[] consideration in the equitable mootness test is whether the bankruptcy court could fashion equitable relief without completely undoing the plan." *Id.* at 1171. "[E]ven incomplete relief can be enough to counsel against mooting the appeal," and courts must "ask whether there are any forms of even partial relief that could be provided." *Id.*

### ii. Analysis

#### 1. Waiver and Opportunity to Address Issues

In his Reply, Goldberg argues that G&K "waived the issue of standing" because it "did not appeal the issue of standing, and did not identify standing as an issue to be determined in a separate statement of issues." (Doc. 20 at 10; *see also* Doc. 20 at 14). While G&K could have possibly waived the issue of *prudential* standing, it is well-established that constitutional standing is a pillar of jurisdiction that cannot be waived. Arguing otherwise would be frivolous.

Furthermore, as the party invoking federal jurisdiction, it is Goldberg who bears the burden of establishing Article III standing. *Lujan*, 504 U.S. at 560. And, regardless of whether the issue is raised by either party, the Court may consider questions of standing sua sponte on appeal. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). With this in mind, and because

1    Goldberg had the opportunity to address these issues in his Reply, the Court finds

2    unpersuasive Goldberg's arguments that the issue was raised in a "back-handed fashion,"

3    that Goldberg did not have time to address the issue, and that Goldberg has somehow been

4    deprived of due process. (*See* Doc. 20 at 5).

### 2.   Article III Standing

6        G&K argues that Goldberg has not suffered a direct injury and that even if he has,

7    he failed to identify what he would gain from a favorable decision. (Doc. 16 at 13–14).

8    G&K explains that "Goldberg does not seek to recover money to be paid to him or even to

9    this bankruptcy estate" and "this appeal would not result in any funds going to the

10   bankruptcy estate to pay such claims." (Doc. 16 at 13). Moreover, G&K argues that the

11   relief Goldberg seeks would not benefit Goldberg because "G&K no longer holds the funds

12   in trust" and, in the event that vacating the Order would cause the funds to be repaid, the

13   funds would go to the Receiver and not Goldberg. (Doc. 16 at 14).

14       Here, the Bankruptcy Court found that Goldberg had Article III standing to object

15   to G&K's Fee Application and Employment Application. The Bankruptcy Court found that

16   Goldberg, as a member of SW, had an injury-in-fact because under Arizona law, after SW's

17   obligations to its creditors were discharged, SW's members were entitled to a pro-rata

18   amount of the surplus. (Doc. 17 at 107). In other words, Goldberg had a "legally protected

19   interest" in the "quantifiable amount that will flow to the members of SW once the creditors

20   of the SW receivership estate have been fully paid." (*Id.*).

21       The Bankruptcy Court found that this injury was "fairly traceable" to Schian signing

22   the Agreement of Counsel on behalf of SW and thereby "cross-collateralizing the fees in

23   the [Potential Dynamix case] with the fees from the Swift [Air] Adversary Proceeding."

24   (Doc. 17 at 108).

25       Finally, the Bankruptcy Court found that Goldberg's injury could be redressed

26   because if the Bankruptcy Court denied either G&K's Employment Application or G&K's

27   Fee Application, "the monies which would otherwise go to G&K would flow to SW's

28   members." (Doc. 17 at 109; *see also* Doc. 17 at 110 (finding Bankruptcy Court rulings

1  would "undoubtedly" bear on issue of how much money SW members would receive from

2  Swift Air receivable)).

3      All of this remains true on appeal; the Court sees no reason why Goldberg would

4  lose Article III standing when he is challenging the same issues. Goldberg still has a legally

5  protected interest in the SW receivership estate because he stands to receive a disbursement

6  from that estate. Schian and G&K, in signing the Agreement of Counsel, effectively

7  reduced the amount of funds in the receivership estate. The Bankruptcy Court can redress

8  this injury because it has authority over the Employment and Fee Applications, both of

9  which directly impact the amount of money in the SW receivership estate. Although the

10  Bankruptcy Court expressed that Goldberg "may not have bankruptcy appellate standing

11  under the more exacting 'person aggrieved' test," (Doc. 17 at 105), as mentioned above,

12  the Ninth Circuit has emphasized Article III standing over the "person aggrieved" standard.

13  Even if applicable, the Court finds that Goldberg has shown that he has a financial stake in

14  this case.[13] In conclusion, the Court finds that Goldberg has standing to appeal.

### 3. Equitable Mootness

16      Finally, it is conceivable that the Bankruptcy Court could take *some* action that

17  would result in funds being repaid to the SW receivership estate, which could result in a

18  payout to Goldberg. Accordingly, the doctrine of equitable mootness is inapt.

### c. Timeliness of Goldberg's Objections

20      The Bankruptcy Court held a hearing on October 3, 2023. (*See generally* Doc. 13-

21  17 (transcript)). In that hearing, the Bankruptcy Judge construed Goldberg's Objections as

22  either a (1) Motion to Alter or Amend a Judgment under Federal Rule of Civil Procedure

23  59, or (2) Motion for Relief from a Judgment or Order under Federal Rule of Civil

---

[13] The Bankruptcy Court's "aggrieved person" analysis remains true on appeal:

> [I]t is undoubtedly true that this Court's ultimate ruling on the G&K Application to Employ and the G&K Fee Application will significantly bear on the issue of how much money SW members will receive from the Swift Proceeds. This is particularly true when all or substantially all of SW's creditors have been paid and final disbursements will go to SW's three owners. To not allow Goldberg and Jess to be heard on an issue where they have a significant financial stake in the outcome of the case would improperly deprive them of their constitutional right to due process.

(Doc. 17 at 110).

1   Procedure 60. (Doc. 13-17 at 101, 153). The Bankruptcy Judge explained that he found

2   Goldberg's Objections untimely under both Rule 59 and 60. (Doc. 13-17 at 101, 153).

3           On November 21, 2023, in a subsequent Order that is the subject of this appeal, the

4   Bankruptcy Judge found that "Jess and Goldberg received notice of the Employment Order

5   but did not timely object to that employment or seek reconsideration." (Doc. 13-19 at 4).

6   Then, in an April 29, 2024 Order, also the subject of this appeal, the Bankruptcy Judge

7   noted that Goldberg had the right to file an appeal regarding the Bankruptcy Court's

8   determination that Goldberg's "objections to the employment of G&K were barred by

9   *laches*." (Doc. 13-20 at 3 n. 1 (emphasis added)).

10          Goldberg argues that Rules 59 and 60 are inapplicable to the Employment Order

11  "because it is neither a final order nor an appealable order."[14] (Doc. 13 at 17–19). G&K

12  argues that Goldberg "misses the point" because the Bankruptcy Court "did not rely on the

13  time limits contained in those rules"[15] but rather ruled that Goldberg's Objections were too

14  late under the doctrine of laches. (Doc. 16 at 17–20).

15          It is unclear whether the Bankruptcy Judge based his rulings solely on the Federal

16  Rules of Civil Procedure (as suggested by the hearing transcript and the November 2023

17  Order), the doctrine of laches (as suggested by the footnote in the April 2024 Order), or

18  both. Regardless, for the following reasons, the Court finds Goldberg's Objections timely

19  under Federal Rule of Civil Procedure 60.

20                          **i. Rule 59(e)**

21          Under Rule 59(e), "[a] motion to alter or amend a *judgment* must be filed no later

22  than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e) (emphasis added). As

23  used in Rule 59(e), "judgment" means any order that may be appealed. Fed. R. Civ. P.

24  54(a). "Thus, the word 'judgment' encompasses final judgments and appealable

25  interlocutory orders." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 467 (9th Cir. 1989).

26  _____

27  [14] In fact, Goldberg actually appears to suggest that there is no rule or case governing the timing of his Objections. (*See, e.g.,* Doc. 20 at 4 ("The Rules and their time limitations are not relevant to the Objections as a matter of law.")). This simply cannot be.

28  [15] The Court is puzzled by this statement, as the block quote included by G&K makes clear that the Bankruptcy Judge did explicitly rely on the time limits in Rules 59 and 60.

### 1. Analysis

The Court does not find that the Employment Order was a "judgment" within the meaning of Rule 59(e). The Employment Order was not a final judgment because it did not "end the litigation or dispose of a complete claim for relief," *see In re Travers*, 202 B.R. 624, 625 (B.A.P. 9th Cir. 1996), and the Employment Order was not an appealable interlocutory order because it did not "resolve[] and seriously affect[] substantive rights" nor did it "finally determine[] the discrete issue to which it is addressed." *In re Bonham*, 229 F.3d 750, 761 (9th Cir. 2000) (citation omitted). The Employment Order simply employed G&K as special counsel. Accordingly, the Employment Order was not a "judgment" under Rule 59(e), so Rule 59(e) was inapplicable. The Bankruptcy Judge erred in ruling otherwise.

### ii.  Rule 60

Generally, under Federal Rule of Civil Procedure 60, a motion for relief from "a final judgment, order, or proceeding" must be made "within a reasonable time." Fed. R. Civ. P. 60. Rule 60 largely applies to bankruptcy court orders, subject to three exceptions not applicable here. Fed. R. Bankr. P. 9024(a); *see also* advisory committee's note (1983) (emphasis added) ("For the purpose of this rule *all orders* of the bankruptcy court are subject to Rule 60.").

Here, the Bankruptcy Judge held that Goldberg's Objections were barred under Rule 60 because Goldberg "waited an unreasonable time period to seek to reverse the order or alter the order [he] entered approving the employment application for [G&K] back in . . . January of 2020." (Doc. 13-17 at 153; *see also* Doc. 13-17 at 101). Thus, on review, the question for this Court is whether Goldberg raised his Objections "within a reasonable time."

### 1. Analysis

In a January 6, 2022 hearing, the Bankruptcy Judge denied Goldberg's Motion for Bankruptcy Rule 2004 Examination, (Doc. 13-6), on ripeness grounds. (Doc. 13-9 at 39). He explained that because there was not yet an outcome in the Potential Dynamix

litigation,[16] it was merely speculative that G&K would invoke the Cross-Collateral Provision to seek payment of its fees from the proceeds of the Swift Air case.[17] (Doc. 13-9 at 4, 8). The following snippet demonstrates the Bankruptcy Judge's thinking:

> How can cross-collateralization be an issue until such time as we know what obligation is cross-collateralized? In other words, until we determine what fee is due to anybody out of the litigation in the Potential Dynamix case, how can we decide what portion of that, if any, is cross-collateralized?

(Doc. 13-9 at 8). The Bankruptcy Judge later confirmed his understanding with Bob Miller, counsel for the Liquidating Trustee in the Swift Air case:

> [W]hatever fee might get paid to [G&K] or Schian Walker out of the Potential Dynamix case . . . is a premature discussion because we don't know yet[.] Nobody has even applied for those fees. But that Swift money would be reserved to determine whatever does happen on this cross-collateralization issue[.] In other words, you're not going to make distribution of Swift money until you know for sure that the Potential Dynamix amount, if any, is resolved.

(Doc. 13-9 at 22–23). Taking the parties' answers together, the Bankruptcy Judge surmised that there was not "any live issue" on what might "get paid out of the Swift Air money until [there was] a concluded result in the Potential Dynamix fight." (Doc. 13-9 at 24–25).

In October 2023, Goldberg told the Bankruptcy Judge that it was Goldberg's belief that he had "to act upon an order that [he] want[ed] reversed or vacated" at the point that G&K sought "the approval of fees based on an agreement." (Doc. 13-17 at 101). This would seem in-line with the Bankruptcy Judge's prior points regarding ripeness. However, the Bankruptcy Judge indicated that he believed that "the order at issue was the employment order," and if Goldberg "had a problem with that, [he] needed to act within Rule 60 time period." (Doc. 13-17 at 102; *see also* Doc. 13-17 at 154 (Bankruptcy Judge

---

[16] Specifically, the Bankruptcy Judge said:
> Mr. Hendricks, my first question to you is why your clients are asserting that there is an adverse outcome in the Potential Dynamix/Amazon litigation. There is no outcome at this point. All I've issued is a tentative ruling. And the briefing is not yet received by me from that tentative ruling. It feels to me an awful lot like you're trying to force the Court's hand on that outcome, the eventual outcome. Why am I not right in believing or feeling that's the case?

(Doc. 13-9 at 4).

[17] The ripeness issue was nearly conceded by Goldberg's counsel, who stated that they "were trying to demonstrate there was the *probable* implication or invocation of the cross-collateralization provisions whereby money from the Swift account is *likely* to be claimed in the [Potential Dynamix] account" (Doc. 13-9 at 5 (emphasis added)).

1  explaining that "everybody knows you've got Rule 59 and 60" to challenge application to

2  employ)).

3       Both cannot be true; either the issue was ripe when the Employment Order was

4  issued, or the issue was ripe when G&K filed its Fee Application.

5       The Court agrees with the Bankruptcy Judge's original reasoning: the Cross-

6  Collateral Provision issue became ripe upon the final ruling in the Potential Dynamix case,

7  (2:13-AP-00799-DPC Docs. 404, 405 (entered August 11, 2022)), or upon G&K's

8  subsequent Fee Application based on the Cross-Collateral Provision,[18] (Doc. 13-11 (filed

9  September 15, 2022)). Goldberg filed his Objections on October 14, 2022, either 29 or 64

10  days after the issue became ripe. (Docs. 13-12, 13-13). In either event, the Court finds that

11  Goldberg raised his objections "within a reasonable time" for purposes of Federal Rule of

12  Civil Procedure 60. The Bankruptcy Court erred in ruling otherwise.

### iii.  Laches

14       As far as the Court can locate, the Bankruptcy Court used the term "laches" twice

15  in the entirety of this case. First, in the hearing on January 6, 2022, the Bankruptcy Judge

16  opined that he thought counsel was saying that "even if [Goldberg was not] absolutely

17  barred [from appealing the Employment Order], then estoppel or laches or some other

18  equitable device should prevent them from raising it." (Doc. 13-9 at 25). Second, in a

19  footnote in the April 29, 2024 Order, the Bankruptcy Judge stated that Goldberg had the

20  right "to file an appeal of this Court's orders determining that (i) his objections to the

21  employment of G&K were barred by laches." (Doc. 13-20 at 3). Based on this footnote,

22  the Bankruptcy Judge appears to suggest that he based his Order denying Goldberg's

23  Objections on laches. However, as just discussed, the Bankruptcy Judge made no mention

24  of laches in the hearing on the Objections, and did not make findings regarding either of

25  the required elements of laches. The Court also did not see any record of G&K arguing

26  laches as an affirmative defense to Goldberg's Objections prior to G&K's Response Brief

27

28  [18] This tracks the understanding of Goldberg, who responded to the Bankruptcy Judge that he had "to act upon an order that [he] want[ed] reversed or vacated" at the point that G&K sought "the approval of fees based on an agreement." (Doc. 13-17 at 101).

in this appeal. Nevertheless, to the extent that the Bankruptcy Judge suggested he might have based his denial of Goldberg's Objections on the doctrine of laches, the first question before the Court is whether doing so was an abuse of discretion. *See In re Beaty*, 306 F.3d 914, 920 (9th Cir. 2002) ("We here clarify that the appropriate standard of review of a determination of whether laches applies in a particular case is abuse of discretion.").

First, neither party argues that it was impermissible for the Bankruptcy Judge to apply, or for G&K to raise, the affirmative defense of laches with respect to the Bankruptcy Court's Employment Order. Thus, the Court proceeds on the presumption that laches is applicable, notwithstanding the fact that in the Court's own research, the Court did not locate a case wherein the doctrine of laches alone was used to determine the timeliness of a Motion for Reconsideration of an interlocutory order.[19]

To assert laches, a defendant must prove: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* at 926 (quoting *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)).

G&K asserts that Goldberg lacked diligence because he "demanded that Schian continue the representation, knew the terms of employment, and failed to object until he was disappointed with the result at trial." (Doc. 16 at 19). G&K also asserts it is prejudiced because it spent three years prosecuting the case and devoted $1.6 million in professional time and $300,000 in costs. (*Id.*).

Assuming arguendo that G&K's arguments at least loosely mirror the Bankruptcy Judge's reasoning, the Court finds he abused his discretion. Goldberg did not lack diligence; as discussed above, by the Bankruptcy Judge's own definition of ripeness, Goldberg's Objections were timely. If Goldberg would have filed earlier, it appears that the Bankruptcy Judge would not have reached the issue. Moreover, the Court does not find G&K was prejudiced, which is the primary concern of the doctrine. *See In re Beaty*, 306 F.3d at 924.

---

[19] The Court did find an instance where the Ninth Circuit Court of Appeals used laches to find a Motion to Vacate under Rule 60(b)(1) untimely, even though it was filed within the one-year period. *Meadows v. Dominican Republic*, 817 F.2d 517, 520–21 (9th Cir. 1987).

G&K appears to argue that it suffered "expectations-based prejudice," which occurs when the party asserting the defense "took actions or suffered consequences that it would not have" if the opposing party had acted earlier. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). Put differently, G&K seems to suggest that it might not have prosecuted the Potential Dynamix case if Goldberg had objected earlier. But G&K had actual notice of Goldberg's various objections as early as February 2020 via Goldberg's Receivership Application, (Doc. 13-12 at 24–33), an email to G&K's managing partner, (Doc. 13-5 at 7–11), and Goldberg's Statement of Position and Reservation of Rights, (Doc. 13-5). G&K cannot now claim it is prejudiced by Goldberg's Objections. For all of the same reasons, the Court is also unpersuaded that the principle of quasi-estoppel applies. (*See* Doc. 16 at 19). The Bankruptcy Judge therefore erred to the extent that he relied on the doctrine of laches to deny Goldberg's Objections.

### d.  Merits of Objections

Goldberg separately argues that the Bankruptcy Court, regardless of timing, "was required to consider the merits of the Objection alleging that [G&K] had obtained the Employment Order by making false and misleading disclosures and by withholding information." (Doc. 13 at 21). The Court notes that the Bankruptcy Judge seemingly *did* reach the merits of Goldberg's Objections in the October 3, 2023 hearing:

> What [Goldberg] wants me to do is find that the initial disclosures in this document, docket entry 579 filed in Potential Dynamix administrative case, failed to properly disclose what was really happening. I am going to overrule that objection, because on its face, paragraph 5 tells us the Potential Dynamix [estate] is never going to be liable on account of Gallagher & Kennedy's work for anything more than the 40 percent max contingency, plus whatever costs are reasonable and approved by the Court. That's still the case. That hasn't changed at all.
>
> The attachment, Exhibit A, talks about additional things going on. Now, whether Mr. Schian had the actual or apparent authority to sign that agreement, that's frankly not my issue. I don't want to take that jurisdiction on because I don't think it's appropriate for me to do so. That is something that the state court, if ever, needs to decide and not me because the State court is, has in its hands all issues relative to what's going on or what went on with Schian Walker. And so I'm not passing judgment on that actual or apparent authority.
>
> So I think the disclosures are adequate. I don't think they're untoward. I think when you read Exhibit A, it may very well enable Gallagher & Kennedy to get additional monies elsewhere. But it's not coming from this bankruptcy estate. We've got a lid on that, and I've already identified what that lid is.

Mr. Hendricks wanted me to talk also about unclean hands and the failure Gallagher & Kennedy, or for that matter, Mr. Schian in whatever capacity, to reveal to the bankruptcy court that there was a change in the hourly rate that Schian Walker originally had with Mr. Shaffer that got changed back in the summer of 2019 to a contingency matter and that that's something that should have been brought to my attention back in January of 2020 when they were seeking for Gallagher & Kennedy to be employed by this Court.

I am not finding that that was a demonstration of unclean hands or even an ethical violation. Rather, when you look at where we're standing today, it looks like a brilliant move by Mr. Shaffer to have gotten counsel to take a contingency arrangement when earlier it was an hourly arrangement. And the hours in this case are dramatically over and above what any contingency was going to pay at a million-one from Amazon or even at [two million], which was the offer of judgment.

And so I'm not finding that Gallagher & Kennedy came to me with unclean hands or that they have unclean hands here today There was a deal that was made with Mr. Shaffer. And I am not hearing Mr. Shaffer, who I think alone has standing, to come forward to me today and say, hey, there's unclean hands by Gallagher & Kennedy, we were hoodwinked, we got brought into a lousy deal because we weren't fully informed.

. . .

Okay[.] And so to summarize, I am not finding that there's unclean hands by Gallagher & Kennedy. I'm not finding that their disclosures were inadequate. The disclosures are what they are. Everybody had an opportunity to see them. Jess and Goldberg both immediately knew what the terms of the employment of Gallagher & Kennedy were. They immediately took action in state court.

(Doc. 13-17 at 149–151, 153). The Bankruptcy Judge immediately followed the above analysis with his Rule 59 and 60 analysis, as previously discussed. (Doc 13-17 at 153–154).

As described by Goldberg himself, his Objections "merely asked the [B]ankruptcy [C]ourt to determine the adequacy of disclosures under applicable bankruptcy law." (Doc. 20 at 10; *see also* Doc. 13-17 at 107 (Goldberg telling the Bankruptcy Judge that "[i]t's all about the disclosures.")). The Bankruptcy Court clearly determined that the disclosures were adequate. Although the Bankruptcy Court's written Order simply states "[t]he objections to the Application filed by Goldberg or Jess and Goldberg are overruled," and the subsequent Order cites laches as the reason, the Bankruptcy Judge's unequivocal oral rulings from the bench cannot be ignored.

To the extent that Goldberg now argues that the Bankruptcy Court needed to

somehow make a finding "regarding the use of the Swift Receivable to pay [G&K] fees," such an argument would be disingenuous as Goldberg's Objections argue that the Bankruptcy Court lacked jurisdiction to decide the issue of the *source* of the funds. (*See, e.g.,* Doc. 13-13 at 9–10 ("The enforceability of the Cross Collateral Provision and fee-sharing provision of the Agreement of Counsel can and must be resolved in the pending State Court action before fees can be awarded."); Doc. 13-13 at 12–13 (arguing the Bankruptcy Court lacks subject matter jurisdiction where the fees were "not payable from the [Potential Dynamix] Estate, and [] would have no effect on the administration of th[e] bankruptcy."); Doc. 13-13 at 13 ("Accordingly, the [Bankruptcy] Court should refrain from considering the Interim Application since it lacks the jurisdiction to resolve the issues.")).

In conclusion, the written Order addressing only timeliness as a basis to overrule the Objections was in error because, as discussed above, the Court finds the Objections to have been timely. However, this error is harmless because the Bankruptcy Judge ruled on the merits of the Objections in the transcript. Accordingly, the Court will not reverse on this basis.

### e.  Bankruptcy Court Approval of Fees

Goldberg argues that the Bankruptcy Court erred when it found "that it was not required by the Employment Order to approve bankruptcy fees and costs payable to [G&K] from the Swift Receivable." (Doc. 13 at 21). More specifically, Goldberg argues that the Bankruptcy Court's Employment Order is inconsistent with the Bankruptcy Court's subsequent November 21, 2023 Order. The Court finds a chronological review helpful to this analysis.

### i.  Factual Background

In the Employment Order, dated January 30, 2020, the Bankruptcy Judge ordered that all compensation sought under the Employment Application was subject to his approval. (Doc. 13-4 at 2 ("[*A*]*ll compensation* to be paid or payable *pursuant to the Application* shall be *subject to Court approval* upon due and proper notice to creditors, the United States Trustee, and to interested parties." (emphasis added)).

On September 15, 2022, G&K filed its Fee Application, seeking $1,603,367.00 in fees and $297,392.54 in costs pursuant to the Employment Application. (Doc. 13-11). Presumably, this was subject to the Bankruptcy Judge's approval.

On August 30, 2023, in ruling on a standing issue, the Bankruptcy Judge stated that he "believe[d] [the Bankruptcy Court] ha[d] an independent duty to review G&K's Fee Application for reasonableness." (Doc. 17 at 104 n. 19).

At the end of a lengthy hearing on October 3, 2023, the Bankruptcy Judge explained that he would approve fees in the amount of "the contingency fee of 40 percent." (Doc. 13-17 at 146). He also approved costs in the amount of $297,392.54. (*Id.* at 147). However, he explained that he was not "*for certain passing judgment on what money needs to come out of the receivership estate*, [or] whether the receivership settlement . . . is enforceable" because it was not his jurisdiction and "need[ed] to be taken up in state court." (*Id.* at 148 (emphasis added)). He concluded that he would not "stand in the way of G&K getting additional monies for work done in connection with the Potential Dynamix case if they can get paid elsewhere for it." (*Id.*).

Finally, in his November 21, 2023 Order, the Bankruptcy Judge ordered that G&K's Fee Application was "granted to the extent of the fees sought in the amount of $265,970.46 and costs in the amount of $57,668.72." (Doc. 13-19 at 3). He also ordered that "*[n]othing . . . in the Employment Order precludes* G&K from accepting and applying any payment that it has received from SW." (Doc. 13-19 at 5 (emphasis added)). Ultimately, the Bankruptcy Judge approved a stipulation between Timothy Shaffer, G&K, Goldberg, and the Receiver, under which G&K received $450,000 from the Potential Dynamix bankruptcy estate. (Doc. 13-20).

### ii.  Analysis

This background presents a quandary. It is the Bankruptcy Judge who approved the Employment Application, which included the Agreement of Counsel and Cross-Collateral Provision. In doing so, he expressly stated that all fees sought pursuant to the Employment Application were subject to his approval. He later confirmed that he believed he had a duty

to rule on the reasonableness of any fees sought by G&K. Then, in the hearing, he opted to not rule on "what money needs to come out of the receivership estate," reasoning that it was outside his jurisdiction to do so.[20] He ultimately did not make a ruling regarding the fees G&K sought above and beyond $450,000, beyond ruling that G&K was "not precluded" from seeking payment it "received from SW."

If the Bankruptcy Judge did not have jurisdiction to rule on the reasonableness of the fees G&K sought from the receivership estate on the back-end, then he did not have jurisdiction to approve the Agreement of Counsel that permitted G&K to seek fees from the receivership estate on the front-end. Put differently, the Bankruptcy Court cannot (1) have jurisdiction to approve a fee structure that permits G&K to seek compensation for its work on the Potential Dynamix case from a source other than the Potential Dynamix bankruptcy estate, (2) require that it approve "all compensation" pursuant to that fee structure, but (3) then not have jurisdiction to approve the "additional monies" G&K seeks for work done *in connection with* the Potential Dynamix case. While this Court understands the Bankruptcy Judge's hesitation to rule that the Receiver must disburse the funds, or find that Schian had authority to enter the Agreement of Counsel, the Bankruptcy Judge is the only one who can rule on the *reasonableness* and the *amount* of the "additional monies" sought by G&K because he is the only one with the requisite knowledge to make such a ruling.

This conclusion is bolstered by the fact that the Receiver, Goldberg, and G&K all indicated that it was their understanding that the Bankruptcy Judge would rule on the reasonableness and the amount of the fees.[21]

---

[20] At oral argument on August 20, 2024, Schian argued that because the Employment Order was interlocutory, the Bankruptcy Judge was free to amend that Order, and he did so when he opted to not explicitly approve the $650,000 that came out of the SW receivership estate. If the Bankruptcy Judge actually intended such an amendment, and the Court has its doubts, then the amended Employment Order would not require *any* court to review the reasonableness of a portion of the requested fees. This may be an abuse of discretion, and this Court would then have to consider whether to vacate the Employment Order, which would then reopen multiple issues and could result in G&K receiving no fees. Accordingly, the Court declines to interpret the Bankruptcy Judge's statements as an amendment to the Employment Order.

[21] *See, e.g.*, Doc. 13-17 at 44 (Schian: "[W]hat we're asking is simply approval of the reasonableness of those fees."); Doc. 16 at 21 ("Goldberg is correct that G&K asked the

However, it is puzzling that the Receiver has agreed that the Bankruptcy Judge should rule on the reasonableness and amount of fees in the Potential Dynamix case because the Receiver entered a Settlement Agreement on behalf of the SW receivership estate wherein G&K received an "initial payment" of $650,000, in part for its work in the Potential Dynamix case, *not subject to any such requirement*. (Doc. 13-14 at 7). Thus, there appears to be an impasse.

In the end, G&K may not collect unreasonable fees in this case. *See* Ariz. Model Rules of Pro. Conduct R. 1.6. Consistent with this Rule, all parties anticipated that some judicial entity must rule on the reasonableness; and this Court agrees. In the beginning of the Potential Dynamix case, the Bankruptcy Judge, in the Employment Order, said that he would do so. The Bankruptcy Judge then erred in determining that he was not the correct court to rule on this issue. Thus, on remand, the Bankruptcy Judge shall determine the reasonableness of G&K's fees in this case, including the $650,000 previously received via the Settlement Agreement. If the Bankruptcy Judge determines that amount should be reduced, G&K must inform the State Court of this determination and proceed accordingly.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Bankruptcy Court's November 21, 2023 and April 29, 2024 Orders are **REVERSED** to the extent that they hold that the Bankruptcy Court does not need to rule on the reasonableness of the $650,000 in attorneys' fees paid to G&K for work in the Potential Dynamix case. This case is **REMANDED** for the Bankruptcy Court to assess the reasonableness of those fees consistent with this Order. The November 21,

---

[Bankruptcy Court] to consider and rule on the reasonableness of the entire $1.1 million."); Doc. 17 at 84 ("Goldberg and G&K . . . agree that [the Bankruptcy Court] has exclusive jurisdiction to consider the [Fee Application]"); Doc. 13-13 at 12 (Goldberg stating that if Agreement of Counsel was enforceable, the Bankruptcy Court would "be called upon to decide whether $1.6 million in fees is reasonable."); Doc. 13-17 at 87 (Goldberg arguing that "[d]isclosure and approval of the employment agreement precedes the determination . . . as to the reasonableness of the fees," but not disagreeing that the Bankruptcy Judge would be the one to make that determination); Doc. 17 at 63 (Receiver stating that "there is no dispute" regarding the fact that the Bankruptcy Court "has sole and exclusive jurisdiction to determine the amount of professional fees and costs that should be paid to the Bankruptcy Estate professionals" in Potential Dynamix case).

2023 and April 29, 2024 Orders are affirmed in all other respects.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly pursuant to Federal Rule of Bankruptcy Procedure 8024(a).

Dated this 3rd day of September, 2025.

James A. Teilborg
Senior United States District Judge